IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 15-cv-00090-LTB

MICHAEL D. ELLIS,

    Plaintiff,
v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, a New Hampshire corporation,

    Defendant.

---

MEMORANDUM OPINION AND ORDER

---

Babcock, J.

This ERISA case is before me on Plaintiff Michael D. Ellis's Motion for Reconsideration/Amendment of Judgment under Fed. R. Civ. P. 59 and/or for Relief From Order Pursuant to Rule 60 [Doc #68]. In its response to Mr. Ellis's motion, Defendant Liberty Life Assurance Company of Boston ("Liberty") moved to strike an exhibit attached to Mr. Ellis's motion [Doc #70]. After consideration of the parties' briefs, the record, and the case file, and for the reasons set forth below, I grant Mr. Ellis's motion; deny Liberty's motion to strike; vacate the judgment entered in this case in favor of Liberty; and enter judgment in favor of Mr. Ellis.

## I. Background

By Memorandum Opinion and Order dated September 18, 2018 [Doc # 66] (the "Order"), I entered judgment in favor of Liberty on Mr. Ellis's claim that Liberty wrongfully terminated his long term disability benefits under Liberty's

Group Disability Income Policy GF3-830-502315-01 (the "Policy").  In analyzing Mr. Ellis's claim, I applied an arbitrary and capricious standard of review after determining that the Policy provision giving Liberty discretionary authority to construe the terms of the Policy and determine benefits eligibility was not void pursuant to C.R.S. § 10-3-1116(2) which prohibits such discretionary provisions.  By his motion, Mr. Ellis, represented by new counsel, again argues that § 10-3-1116(2) is applicable in this case and that his benefits claim is therefore subject to de novo review.  Mr. Ellis further argues that de novo review dictates that judgment be entered in his favor on his claim for continuing long term disability benefits under the Policy.

### III.  Analysis

#### A.  Standard of Review

My conclusion that § 10-3-1116(2) was not retroactively applicable to the Policy was predicated on the fact that the Policy was issued in 2005, prior to the enactment of §10-3-1116(2) in 2008.  In reaching this conclusion, I considered Mr. Ellis's argument that the 2005 issuance date was not determinative because relevant events, including renewals and amendments to the Policy and the assertion and processing of his disability claim, occurred after 2008.

In again arguing that 2005 is not the determinative date in analyzing the applicability of §10-3-1116(2), Mr. Ellis focuses on amendments to the Policy which he made cursory reference to in his original briefing and a Summary Plan Description ("SPD") for Comcast's Disability Plan that was not part of the

administrative record. With respect to amendments, Mr. Ellis cites footers on several pages of the Policy to demonstrate that portions of the Policy were amended subsequent to the 2005 issuance date, most notably in 2011. *See* Doc # 52, pp. 16, 17, 18, 21, 22, 31 & 32. The cited pages do not include the General Provisions section of the Policy which contains the discretionary authority provision that Liberty relies on for application of an arbitrary and capricious standard of review. In fact, this section of the Policy does not reference any effective date, either 2005 or any subsequent year. *See* Doc # 52, pp. 41-5. Liberty, however, bears the burden of establishing that the arbitrary and capricious standard of review is applicable in this case. *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan,* 605 F.3d 789,796 (10th Cir. 2010).

Liberty has failed to provide any evidence to rebut Mr. Ellis's argument that the Policy has been amended several times. Liberty has also failed to cite any legal authority to rebut Mr. Ellis's argument that these amendments take this case out of the purview of *Johnson v. Life Ins. Co. of North Amer.,* 2017 WL 1154027 at *11-*13 (D. Colo. Mar. 28, 2017) and *Mustain-Wood v. Nw. Mut. Life Ins. Co.,* 938 F. Supp. 2d 1081, 1084-85 (D. Colo. 2013), which informed my analysis of the retroactivity of § 10-3-1116(2) in the Order. Since both *Johnson* and *Mustain-Wood* dealt solely with policy renewals, I no longer find them persuasive authority for my analysis of this issue.

In addition, the SPD submitted by Mr. Ellis with his motion provides as follows:

3

> This [Plan] is effective January 1, 2011 and is established by [Comcast] to provide both short-term disability and long-term disability benefits to its eligible employees. It is the successor plan to the previously maintained Short-Term Disability Plan and Long-Term Disability Plan.

*See* Ex. 1 to Motion, p.2. Liberty argues that I should not even consider the SPD because it was not part of the administrative record before the Court. As Mr. Ellis points out, however, Liberty was responsible for compiling the administrative record to be reviewed by the Court (*see* Doc #70, p.2) and owed a fiduciary duty to him to ensure that he received any benefits to which he was entitled. *See Gaither v. Aetna Life Ins. Co.,* 394 F.3d 792, 807-08 (10th Cir. 2004). Asking the Court not to consider information known to it that is relevant to Mr. Ellis's claim for long term disability runs counter to the duty that Liberty owes Mr. Ellis. I therefore reject Liberty's request that I strike the SPD from consideration.

Liberty also argues that it should not be bound by the SPD since it was prepared and issued by Comcast. Clearly though, the SPD and the Policy are related. *See* Exhibit 1 to Motion, p. 2 ("... benefits which are insured are provided through a contract of insurance..."). Furthermore, Mr. Ellis's claim for long term disability benefits arises out of his participation in Comcast's Disability Plan which, per the SPD, went into effect in 2011, or well after the enactment of § 10-3-1116(2)'s prohibition on discretionary provisions like that contained in the Policy.

Again, Liberty bears the burden of establishing that the arbitrary and capricious standard of review is applicable in this case. *LaAsmar, supra.* In light of the numerous amendments to the Policy that have now been highlighted by Mr.

Ellis and the SPD submitted to the Court with his motion, I conclude that Liberty is unable to meet its burden of establishing that it is entitled to a more deferential standard of review because the Policy issuance date of 2005 precludes application of § 10-3-1116(2). I must therefore reconsider Mr. Ellis's claim for continuing long term disability benefits de novo.

In this case, de novo review means that I give no deference to Liberty's decision to terminate payment of long term disability benefits to Mr. Ellis but rather take a fresh look at all of the evidence and determine whether a preponderance of the evidence supports Liberty's decision. *See Smith v. Reliance Standard Life Ins. Co.,* 322 F. Supp. 2d 1168, 1176 (D. Colo. 2004); *Reynolds v. UNUM Life Ins. Co. of Amer.,* 1998 WL 654475 at *3 (D. Colo. June 15, 1998).

**B. Merits Of Mr. Ellis's Claim for Continuing Long Term Disability Benefits**

The background relating to Mr. Ellis's claim for long term disability benefits that was set forth in the Order is incorporated herein by reference. *See* Doc # 66, pp. 1-12. I further note that neither Mr. Ellis nor Liberty has presented any new evidence regarding Mr. Ellis's claim of ongoing disability or made any additional arguments regarding Liberty's decision to terminate his long term disability benefits. Applying the de novo standard of review to the evidence and arguments presented in the parties' original briefing, I conclude that Liberty's decision to terminate Mr. Ellis's long term disability benefits under the Policy's "Any Occupation" provision is not supported by a preponderance of the evidence and therefore enter judgment in favor of Mr. Ellis for the reasons set forth below.

As set forth in the Order, Mr. Ellis's treatment providers were all in agreement that he suffered from some degree of cognitive impairment after experiencing significant health issues in January and February of 2012. *See e.g.* Order, pp. 3-4. Drs. Hadley and Zacharias expressly advised Liberty that this impairment rendered Mr. Ellis unable to work. *Id.* Dr. Helffenstein reached the same conclusion after his initial neuropsychological examination of Mr. Ellis, and Dr. Crouch, Liberty's own consulting neuropsychologist, twice reached this same conclusion though he questioned whether the 24 seconds of heart stoppage that Mr. Ellis experienced on February 1, 2012 could be the sole cause of his impairment. *Id.* at pp. 6-7. Results from clandestine surveillance conducted of Mr. Ellis on behalf of Liberty over several days were consistent with these assessments in that they showed minimal activity where Mr. Ellis was once driven by someone else and walked slowly using a cane. Doc # 34-12, pp. 4-6 & Doc # 35-5, pp. 14-18.

Although a Transferrable Skills Analysis/Vocational Review of Mr. Ellis that was performed on behalf of Liberty determined that Mr. Ellis could work in occupations including software engineer and computer systems engineer, this analysis notably did not include any of the cognitive limitations that are noted throughout Mr. Ellis's file and which were unchallenged at the time vocational analysis was completed. *Id.* at p. 8. Prior to Liberty's termination of Mr. Ellis's long term disability benefits then, the only evidence that it had to support this decision was Dr. Gant's report from his neuropsychological testing of Mr. Ellis at Liberty's request.

6

During his testing of Mr. Ellis, Dr. Gant observed that Mr. Ellis had issues with his balance, was slow to complete the testing, and had difficulty expressing himself. Doc # 34-10, p. 5 - 6. However, the results of Dr. Gant's testing were "invalid," and Dr. Gant concluded that he was "not certain" that Mr. Ellis suffered from cognitive impairment though he too opined that any such impairment was not caused by the 24-second period of asystole that Mr. Ellis suffered on February 1, 2012. *Id.* at p. 11. Notably, Dr. Gant also stated "however, if additional information is provided for review, including Dr. Helffenstein's raw data, I would be happy to either confirm or amend my current opinions." Doc # 34-9, p. 23. No further information was provided to Dr. Gant even though Dr. Helffenstein's raw data had previously been provided to Dr. Crouch, and Dr. Gant neither confirmed nor amended his findings. Liberty terminated Mr. Ellis's long term disability benefits based on Dr. Gant's neuropsychological testing despite all the other evidence supporting his claim. Doc # 34-9, p. 15.

In appealing Liberty's decision to terminate benefits, Mr. Ellis provided even more compelling additional evidence to support his claim for long term disability benefits including a report from a neuropsychological re-evaluation of Mr. Ellis performed by Dr. Helffenstein, a letter from a speech-language therapist who treated Mr. Ellis "over several sessions," findings of disability by the Social Security Administration, and abnormal results from a SPECT brain imaging study. *See* Order, p. 2, 4, 10-11.

Liberty denied Mr. Ellis's appeal. In support of this decision, Liberty relied on the report of Dr. Timothy Belliveau, Ph.D., who reviewed Mr. Ellis's file but did not personally see Mr. Ellis. Although Dr. Belliveau concluded that the records he reviewed did not support a finding that Mr. Ellis suffered from any cognitive impairment, the findings that led to this conclusion are often difficult to follow and unpersuasive in any event.

Most significantly, Dr. Belliveau was critical of Dr. Helffenstein's opinions of Mr. Ellis's disability based on the testing Dr. Helffenstein utilized to assess the validity of Mr. Ellis's cognitive limitations. However, Mr. Ellis passed the bulk of the validity tests administered by Dr. Helffenstein, and there is ample evidence to show that Mr. Ellis consistently demonstrated the same cognitive limitations to his treatment providers. Dr. Belliveau emphasizes that Mr. Ellis did not pass what he characterizes as the most sensitive symptom validity tests - the Word Memory Test ("WMT") and the Nonverbal Medical Symptom Validity Test ("NVMSVT") administered by Dr. Gant. However, Dr. Crouch did not specify that either of these tests should be administered in responding to Liberty's request for an outline of suggested tests and questions for a neuropsychological examination of Mr. Ellis (Doc # 34-11, pp. 11 -12), and Mr. Ellis had no notice that these specific tests would be determinative. *See* Doc # 34-9, p. 17. Liberty also relied on Dr. Belliveau for its rejection of the SPECT imaging results even though Dr. Belliveau stated that he would defer to analysis by a consulting neurologist or radiologist on this issue. There is no evidence that Liberty ever requested such a consultation.

8

Ultimately, Liberty's conclusion that Mr. Ellis was capable of performing the alternative occupations identified in his vocational analysis was predicated on its conclusion that Mr. Ellis did not suffer from any cognitive impairment. This conclusion, however, is not supported by a preponderance of the evidence. Rather, in reaching this conclusion, Liberty attached greater weight to the relatively scant evidence that supported a denial of ongoing long term disability benefits for Mr. Ellis than to the voluminous evidence that supported a contrary conclusion. Moreover, the probative value of the evidence relied on by Liberty is significantly undermined by Liberty's failure to address acknowledged shortcomings in this evidence through additional review and consultation.

## IV. Conclusion

Because I conclude that de novo review of this case dictates a different result than the arbitrary and capricious standard of review previously employed, justice requires that the judgment entered in favor of Liberty be vacated and a new judgment entered accordingly. IT IS THEREFORE ORDERED as follows:

1. Plaintiff Michael D. Ellis's Motion for Reconsideration/Amendment of Judgment under Fed. R. Civ. P. 59 and/or for Relief From Order Pursuant to Rule 60 [Doc 68] is GRANTED;

2. Defendant Liberty Life Assurance Company of Boston's Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) [Doc # 70] is DENIED;

3. The Court's Memorandum Opinion and Order dated September 18, 2018 [Doc #66] and the corresponding Final Judgment entered September 19, 2018 [Doc # 67] are hereby VACATED;

4. Judgment shall enter in favor of Mr. Ellis for long term disability benefits in the amount of $8,572.29 per month beginning December 4, 2013 and continuing unless and until Mr. Ellis's medical condition changes or until he reaches the age of 65 on September 12, 2023;

5. The monthly benefit payable to Mr. Ellis by Liberty shall be reduced by the amount of any Social Security Disability Income paid to him for the same time period;

6. Mr. Ellis shall be awarded his costs and may also file a motion for interest and attorney fees within thirty (30) days of the date of this Order.

Dated: January 15, 2019.

BY THE COURT:

s/Lewis T. Babcock
Lewis T. Babcock, Judge